Pedro BARRIGA and Maria Elena Barriga *v.*
The ARKANSAS and MISSOURI RAILROAD COMPANY,
A Corporation

CA 02-195                                    87 S.W.3d 808

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered October 30, 2002

*Odom & Elliott, P.A.*, by: *Don R. Elliott, Jr.*; and *Monzer Mansour*, for appellants.

*Cypert, Crouch, Clark & Harwell*, by: *James E. Crouch*, for appellee.

ANDREE LAYTON ROAF, Judge. Pedro Barriga and his wife, Elena Barriga, appeal from the trial court's granting of summary judgment in favor of the appellee, the Arkansas and Missouri Railroad Company (the "Railroad"). Appellants argue that the trial court erred in granting summary judgment because a question of material fact existed as to whether the Railroad's violation of an internal regulation was the proximate cause of his injury. We affirm.

On November 30, 2000, Pedro Barriga approached a railroad crossing while he was traveling eastbound on Highway 12 in Rogers, Arkansas. The railroad crossing consisted of one main track running north and south and two inferior tracks, one on each side of and parallel to the main track. The crossing was marked by cross bucks and flashing signals with bells that faced both east and westbound traffic. The tracks are owned by the Railroad.

As Barriga approached the crossing, several boxcars owned by the Railroad were parked approximately sixty to seventy-five feet north of the intersection on the side track nearest Barriga, and the

warning signals were flashing and the bells were ringing. Barriga continued through the crossing and was struck by a train moving south down the center track. Barriga sustained injuries as a result of the incident.

Barriga filed suit against the Railroad for negligence; the suit included a claim filed by his wife for loss of consortium. Barriga's complaint made several allegations of negligence, including 1) failure to provide a watchman or guard at the crossing, 2) failure to timely and properly sound the train horn or signal, 3) failure to keep a proper lookout, 4) violation of the Railroad's internal rules regulating the parking of boxcars near crossings, and 5) excessive speed under the conditions. The Railroad answered by denying the material allegations of the complaint. It also filed a motion for summary judgment pursuant to Ark. R. Civ. P. 56 and a brief in support of the motion, alleging that there were no genuine issues of material fact to be tried. After conducting a hearing, the trial court granted the Railroad's motion for summary judgment and dismissed the complaint with prejudice; Barriga and his wife appeal from the dismissal.

Barriga argues that the trial court erred in granting summary judgment in favor of the Railroad because a genuine issue of material fact remained as to whether the Railroad's violation of its internal regulation was a proximate cause of his injuries.

On appellate review, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Pollard v. Union Pacific R. Co.*, 75 Ark. App. 75, 54 S.W.3d 559 (2001). This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Id.*

The law is well settled that summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to a judgment as a matter of law. *Id.* To establish a prima facie case of negligence, the plaintiff must demonstrate that the

defendant breached a standard of care, that damages were sustained, and that the defendant's actions were a proximate cause of those damages. *Id.* "Proximate cause" is defined, for negligence purposes, as that which in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred. *Id.* Proximate causation is usually an issue for the jury to decide in a negligence action, and when there is evidence to establish a causal connection between negligence of the defendant and damage to the plaintiff, it is proper for the case to go to the jury; in other words, proximate causation becomes a question of law only if reasonable minds could not differ. *Id.*

Barriga contends that the boxcars on the adjacent track were parked in violation of the Railroad's internal regulation 6.32.4, which provides:

> Leave cars, engines, or equipment clear of road crossings and crossing signal circuits.

> If possible, avoid leaving cars, engines, or equipment standing closer than 250 feet from the road crossing when there is an adjacent track.

Barriga asserts that a question of fact exists as to whether the violation of this regulation was a proximate cause of his injuries. He contends that if the Railroad had not parked its cars close to the intersection, he could have seen the train approaching the intersection and would not have been led to believe that the parked boxcars were setting off the flashing lights.

In support of its motion for summary judgment, the Railroad established the following facts by affidavit and the deposition testimony of its agents and Barriga. The train involved in the collision had parked seven cars on the side track, or "switch back," and was backing south toward the crossing. The train was equipped with an "event recorder," which established that the train was traveling at twenty-three miles per hour, its lights and bells were on, and the horn was being sounded for approximately thirty-five seconds before the accident. The flashing signals at the crossing were also operating.

In his deposition, Barriga testified that he noticed the parked boxcars blocking the view before he approached the crossing. He further stated that he did not stop when he came to the crossing, that as he got closer to the crossing he looked only south, and that he did not look to the north (where the boxcars were and where the train was coming from) until after he was on the track. Barriga further stated that he did not see the flashing lights and, although the window of his vehicle was down, did not hear the bells or the warning horn of the train.

The Railroad argued in its summary-judgment motion that it was not negligent in this instance, that the presence of the boxcars on the side track was not the proximate cause of the collision, and that Barriga had the duty, when warned by the flashing signal lights at a crossing, to stop within fifty feet but not less than fifteen feet from the track and to not proceed until he could do so safely. Ark. Code Ann. § 27-51-707(a) (Repl. 1994).

We agree that the trial court's grant of summary judgment was proper under the facts of this case given, in particular, the statements of Barriga. He did not contend in his deposition that he was misled by the parked boxcars to ignore the flashing signal, but instead he stated that he did not see the signal and did not hear the bells or the train's horn, both of which were sounding. Although he did say that he observed the parked boxcars blocking the view to the north before he approached the crossing, he stated that as he approached, he did not stop or attempt to look north until he was on the tracks. Under these circumstances, we cannot say that reasonable minds could differ that the proximate cause of this collision was Barriga's failure to stop despite all of the warning signals and despite having a statutory duty to do so.

Affirmed.

STROUD, C.J., and PITTMAN, HART, and ROBBINS, JJ., agree.

GRIFFEN, J., dissents.

WENDELL L. GRIFFEN, Judge, dissenting. I would reverse and remand for trial in this case because appellee, as the moving party in the summary judgment proceeding,

failed to carry its burden to sustain its motion. There are disputed facts regarding whether appellee had a standard of care applicable to this case and the degree of appellant's fault relative to appellee's fault. There also exist different hypotheses concerning undisputed facts, namely the significance of the parked boxcars in relation to appellee's potential standard of care and appellant's own degree of fault. Reasonable minds can differ on these issues. In my opinion, the majority applies our standard of review in summary-judgment cases incorrectly. The majority appears to treat this case as if it were a challenge to a directed verdict where we would review the lower court's decision based on the existence of sufficient evidence. *See, e.g., Pack v. State*, 73 Ark. App. 123, 41 S.W.3d 409 (2001).

However, as the majority correctly points out, we review a trial court's grant of summary judgment by determining whether the grant was appropriate based on whether the evidence presented by the moving party left a material question of fact unanswered. *St. Paul Reinsurance, Inc. v. Irons*, 72 Ark. App. 134, 34 S.W.3d 760 (2000). The moving party always bears the burden of sustaining a motion for summary judgment. *Id.* We view all proof in the light most favorable to the resisting party and resolve any doubts against the moving party. *Id.* The moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Id.* Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Cole v. Laws*, 349 Ark. 177, 76 S.W.3d 878 (2002).

Notably, and crucially important for the instant case, after reviewing undisputed facts, summary judgment is not appropriate if, under the evidence, reasonable persons might reach different conclusions from those undisputed facts. *Id.* In other words, when there is no material dispute as to the facts, we should determine whether reasonable minds could draw reasonable inconsistent hypotheses to render summary judgment inappropriate. *Thomas v. Stewart*, 347 Ark. 33, 60 S.W.3d 415 (2001). The ques-

tion is whether there is evidence sufficient to raise a fact issue, rather than — as in a sufficiency-of-the-evidence claim — evidence sufficient to compel a conclusion on the part of the factfinder. *Flentje v. First Nat. Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000); *Wallace v. Broyles*, 332 Ark. 189, 961 S.W.2d 712 (1998). Therefore, the object is not to try the issue, but to determine if there are any issues to be tried, and if "there is any doubt whatsoever," summary judgment is inappropriate. *Flentje*, 340 Ark. at 570, 11 S.W.3d at 536.

This is the standard of review against which we should have measured the appropriateness of the lower court's grant of summary judgment. I would reverse because summary judgment was entered notwithstanding the existence of reasonable inconsistent hypotheses and other existing factual disputes.

Appellant's chief argument consists of his contention that the A&M employees' failure to abide by their internal company regulations presents evidence of negligence and consequently makes summary judgment inappropriate because it deprives the jury of its task to determine proximate cause. In response, appellee contends that the alleged internal regulation violation is insufficient as a matter of law to constitute evidence of negligence and therefore does not pose a hurdle for summary judgment. In his turn, appellant also argues that the jury should be allowed to determine the degree of appellant's negligence as it compares with appellee's negligence — a point ignored by the majority opinion — and thus, that summary judgment was not appropriate.

Indeed, under a comparative fault analysis, there must first occur a determination of proximate cause before any fault can be assessed. *Craig v. Taylor*, 323 Ark. 363, 915 S.W.2d 257 (1996) (overruled on other grounds); *Ollar v. Spakes*, 269 Ark. 488, 601 S.W.2d 868 (1980) (Fogleman, J., dissenting) (stating that questions such as comparative fault usually cannot be resolved on motion for summary judgment). Proximate cause is generally for the jury to determine. *Craig v. Taylor, supra.* The jury must determine how the negligence of the plaintiff compares to the negligence of the defendant. *Rhoads v. Serv. Mach. Co.*, 329 F. Supp. 367 (E.D. Ark. 1971) (decision under prior law). Comparing

negligence of the parties is not appropriate for this court when "fair-minded men" might reach differing conclusions. *Missouri Pac. R.R. v. Biddle*, 293 Ark. 142, 732 S.W.2d 473 (1987).

Proximate cause is defined as "that which in a natural and continuous sequence, unbroken by any efficient intervening cause, produced the injury, and without which the result would not have occurred." *Union Pac. R.R. Co. v. Sharp*, 330 Ark. 174, 952 S.W.2d 658 (1997). Proximate causation is usually for the jury to determine when there is evidence to establish a causal connection between the actions of the defendant and the damage. *Id.* Only when the evidence is such that reasonable minds cannot differ does the issue become a question of law to be determined by the trial court. *Skinner v. R.J. Griffin & Co.*, 313 Ark. 430, 855 S.W.2d 913 (1993). Generally, the violation of a statute, ordinance, or regulation is evidence of negligence to be considered by the jury. *See Bridgforth v. Vandiver*, 225 Ark. 702, 284 S.W.2d 623 (1955). However, in the case of company rules and regulations, such rules or regulations must establish a standard of care in order to be considered evidence of negligence. *Arkansas Louisiana Gas Co. v. Stracener*, 239 Ark. 1001, 395 S.W.2d 745 (1965). Appellee would like us to treat the company rule in question as a purely internal regulation. The facts, as they appear in the abstract before us, do not support this assertion. Instead, it appears upon review that there is a genuine issue of fact as to whether this regulation is merely internal or actually could be considered an industry standard, and thus a standard of care applicable to this case. Appellant contends that the A&M adopted the General Code of Operating Procedures that has been adopted by all the railway companies in the United States. All of the adopted regulations contain, according to appellant, the safety provision to park railroad cars farther than 250 feet from crossings. This is an issue of fact to be determined by a jury, not by a trial judge upon a motion for summary judgment. If appellant can establish a standard of care on that issue, then a jury should determine whether the A&M breached a duty and provided a proximate cause for appellant's injuries. For that matter, it should not go unnoticed by this court that appellee, in its brief, remains conveniently silent on the issue whether or not its internal rules are actually part of an industry-wide "code,"

at least in as much as such a code might be adopted by all railway companies.

In much the same manner, appellee's argument regarding whether or not appellant is barred from recovery based upon his own negligence—allegedly greater than the negligence of the railway company—also misses the point. Appellee suggests—and the majority appears to accept this argument upon face value—that it is an established fact that appellant's negligence in this case is greater than appellee's. Appellant admits that he may have been distracted, and that he may not have looked as carefully as he should have, but reasonable minds can still disagree about whether the parked boxcars also constitute a proximate cause to his injuries and whether, consequently, the appellee's negligence is greater or less than appellant's. The dispute before us rests on whether the boxcars somehow hindered appellant from detecting the train in time. The dispute also hinges on each party's respective degree of fault. In light of the circumstances, I would not take appellee's word for granted, merely because appellee suggests that appellant just had to inch forward a little more on the tracks in order to detect the train in time to avoid a collision. This constitutes a conclusion by appellee, not an undisputed fact that would entitle appellee to a judgment as a matter of law.

To sum up the above, it is for a jury to decide (1) whether a standard of care exists that is controlling in the present case, (2) whether appellee breached that standard of care, and (3) to what degree appellant's own negligence might offset appellee's negligence, if any. Appellee, as the moving party in the summary judgment proceeding, failed to carry its burden to sustain its motion. There exist disputed facts concerning the standard of care and the degree of appellant's fault. Nothing in the record suggests that appellant's fault is necessarily greater than the appellee's fault. There also exist possible different hypotheses concerning undisputed facts, namely the significance of the parked boxcars, whether there is an applicable standard of care, and what such standard means for appellee's potential negligence. Reasonable minds can differ on those questions. As the case stands currently, a jury should view further evidence, as can be developed only in a trial, to come to a conclusion on the facts. For that reason, I would reverse the order granting summary judgment and remand for proceedings on the merits.