2011 Ark. App. 713

CITY OF BRYANT and Richard Penn, as Director of Public Works for the City of Bryant, Appellants

v.

Edward COLLINS and Quinn Collins, Appellees.

No. CA 11–378.

Court of Appeals of Arkansas.

Nov. 16, 2011.

---

Matthew Keith Wren, Little Rock, for appellant.

Richard Hartley Mays, Heber Springs, for appellee.

CLIFF HOOFMAN, Judge.

Appellants City of Bryant and Richard Penn ("the City") appeal from a jury verdict finding the City liable to the appellees, Edward and Quinn Collins, in the amount of $70,000. On appeal, the City argues that Penn did not have authority to enter into the alleged contract with the appellees and that the city council did not ratify the contract after the fact. We agree with the City and reverse the jury verdict against it.

Edward and Quinn Collins filed a complaint against the City of Bryant and Richard Penn, Director of Public Works, on July 10, 2009. The Collinses sought relief for the City's failure to comply with the terms and conditions of an agreement between the parties for the location of a storm drainage easement upon the Collinses' property. In 2008, the City undertook emergency activities after extensive flooding in Bryant to alleviate future flooding. As part of these activities, the City excavated a ditch on the Collinses' property. The Collinses alleged that they signed and delivered a "storm drainage easement" submitted to them by the City on March 27, 2009, in preparation for the construction of a concrete drain to be installed in the ditch. The Collinses alleged that the City had failed to proceed further in constructing a permanent storm drain in the ditch, covering the drain, and restoring the property in a neat and presentable condition as soon as reasonably practicable. They alleged that the ditch was eroding and constituted a nuisance, an eyesore, and a health and safety hazard. They requested an injunction to require the City to complete the work, damages for the loss of use of their property and breach of the contract, and attorney's fees and costs.

A jury trial was held on November 29 and 30, 2010. In addition to being the director of community development and public works, Richard Penn served as the city engineer. As city engineer, Penn was responsible for reviewing subdivision plats and proposals by developers with regard to the structures that would be built, such as drainage for the streets, water, and sewer. He was also responsible for obtaining easements and other documents for drainage projects. In 2006, the City hired FTN & Associates to study its storm water and flooding problems. The appellees' property was identified as an area of concern in FTN's report, released in 2007, regarding the potential for flooding due to rainfall. The report stated that this could

be improved with measures such as widening ditches and making existing culverts larger.

On April 3, 2008, notable storms caused flooding to 47 homes in Bryant, including the appellees' home. More storms in April and July caused flooding in the city. In April 2008, the city council convened and heard public requests to provide immediate help with the ₃flooding issues. The council decided that this was an emergency situation and empowered Fire Chief Randy Cox "to take actions as necessary until there [was] a permanent fix." Penn assisted Cox in this emergency situation, called Operation Flood Relief.

After flooding issues with a July storm, Cox testified that it was explained to him that the current piping on Augusta Cove, the appellees' street, would need to be enlarged to increase its capacity. Cox asked Penn if a ditch beside the existing pipe on the appellees' property would provide some immediate relief. Cox testified that a representative of FTN agreed that a ditch would provide some relief. The ditch was dug toward the end of July 2008. Soon after the ditch was dug, Cox contacted Penn to request a chain-link fence be erected around the ditch for safety purposes.

Edward Collins testified that after the July storms, Cox and Penn talked to him about having the ditch dug, and Cox explained that there were plans to bring in box culverts around September or October 2008. Collins testified that he and his wife agreed to the ditch based on the information that was provided about installing culverts and the fact that the ditch would be a temporary situation. Collins was not asked to sign any documents at the time the ditch was dug.

The City already had a permanent easement for the existing pipe on the appellees' property, but the ditch was partially outside of this easement. After Cox's ap-

pointment as incident commander expired around September 2008, the responsibility of organizing and supervising the projects fell back on Penn. Penn testified that the ditch was never intended to become a permanent fixture. Instead, the ditch was intended to take care of the flooding ₄problem until the permanent pipe suggested by FTN was installed, after which it would be covered over with soil and sodded on top.

In late 2008, Penn recommended to the city council that they authorize FTN to do detailed drawings of plans and get bids for the work for the storm-drainage-system modifications on Augusta Cove. The city council authorized FTN to proceed, and FTN delivered a task order describing what they proposed to do. The council accepted the task order and requested that FTN prepare the design drawings, specifications, bid documents, and easements. Penn testified that the council's act of authorizing the design work to be done by FTN did not constitute acceptance of the project. At this point, the city council had only authorized work on the appellees' property as an emergency action taken by Cox as incident commander; they had not authorized any design work to be constructed.

The council approved advertisement of the project, and bids were received. Penn testified that since an easement would have to be executed prior to starting any work after the council made the final approval of the project, he tried to expedite things by taking the easement prepared by FTN to the property owners. Penn took the easement to the appellees on March 27, 2009, and they signed it. He told the appellees that if they got it signed then, they may be able to get a sooner start date for the contractor if it was approved.

Collins, who was on the city council beginning in January 2009, testified that

when Penn brought him the easement, he had never seen it before and it had never been discussed at a council meeting. He testified that he did not know whether the project had been funded when he signed the easement, and that as far as he knew, the city had not authorized Penn to acquire part of his property. Collins testified that when he signed the easement, Penn told him that the time frame for the work would be four to six weeks.

After acquiring the easement, Penn placed it in a file along with information regarding the low bidder and drawings to be presented to the council for approval at the April 2009 meeting. Collins testified that it was his understanding that Penn would present everything to the council for the "last bit of approval." At this meeting, the council discussed the project, including where it was located, who benefited, the priority, and the cost; however, the council did not take any action to accept the low bid. Collins testified that a council member told him to fix his property himself and the City might reimburse him someday. Collins acknowledged that the council never approved the project after he signed the easement.

Collins testified that since the ditch had been dug, some water had reached the corner of his garage, but it had not flooded. He testified that the cost to repair the damage to his property would be roughly $106,000, which was the cost of the project submitted to the city council. Neighbors of the appellees testified about the hazards created by the ditch, including exposed gas and electric lines, increased mosquitoes and snakes, and an overgrowth of weeds. At some point, the City had attempted to secure the fence around the ditch because it was collapsing. Penn testified that the City had not done any additional work or disturbed the property since he took the easement to the appellees.

The City moved for directed verdict, arguing that there was no evidence that Penn and Cox had the authority to obligate the City to place culverts on the appellees' property and obtain the easement. The City also argued that although the easement required that any disturbed property be restored as soon as reasonably practicable, the City had not disturbed the property since the easement was signed and there was insufficient evidence of damages. The court denied the motion. The motion was renewed after the close of all of the evidence, and it was denied again.

The jury returned a verdict in favor of the Collinses and assessed their damages against the City of Bryant in the amount of $70,000. The court entered the judgment against the City on December 17, 2010. The appellants filed a notice of appeal on January 14, 2011.

The City argues that there was no evidence that Penn had the authority to bind the City to a contract with the appellees or that the City ratified any unauthorized agreement with the appellees. A directed-verdict motion is a challenge to the sufficiency of the evidence, and when reviewing a denial of a motion for a directed verdict, this court determines whether the jury's verdict is supported by substantial evidence. *Wal–Mart Stores, Inc. v. Kilgore,* 85 Ark.App. 231, 148 S.W.3d 754 (2004). Substantial evidence is defined as evidence of sufficient force and character to compel a conclusion one way or the other with reasonable certainty; it must force the mind to pass beyond mere suspicion or conjecture. *Id.*

The City argues that the requirements necessary for a city to enter into a contract regarding the purchase of real estate are specifically set out in Arkansas Code Annotated section 14–54–302(a)(2) and (c) (Supp.2011):

(a)(2) Municipal corporations are empowered and authorized to buy any real estate or personal property.

. . . .

(c) The execution of all contracts and conveyances and lease contracts shall be performed by the mayor and city clerk or recorder, when authorized by a resolution in writing and approved by a majority vote of the city council present and participating.

The City argues that there was no evidence that these requirements were met; thus, any alleged contract was void due to illegality. The City cites *Dotson v. City of Lowell*, 375 Ark. 89, 289 S.W.3d 55 (2008), where the alleged contract was held to be illegal because it was never sanctioned by resolution of the city council, as required by the statute. The City cites Penn's testimony that he brought the easement to the appellees before the city council approved the project and Collins's testimony that the council never authorized Penn to acquire any part of the appellees' property. The City argues that although Penn was authorized to obtain the design drawings, bid documents, and easements from FTN, he was not authorized to execute the easement with the appellees for a project that had not been approved.

The appellees argue that the circumstances under which the easement was obtained indicate that Cox and Penn were given actual authority by the city council to negotiate and execute the easement. They argue that the City had allowed Penn to obtain easements on multiple occasions without objection, as he had signed at least 14 easements for city projects since becoming city engineer and none had been revoked because he was not authorized to sign them. The City argues that the fact that Penn had signed at least 14 easements proves nothing because he could either have been authorized to obtain them when he did so or they could have

been subsequently ratified by the council. The appellees also argue that the City's actions in securing the fence surrounding the ditch and offering to clean out the ditch indicated an obligation the City had toward the ditch. The City argues that any obligation to maintain the ditch is not evidence that Penn had the authority to enter into an agreement with the appellees and obligate the City to put in drainage culverts on their property.

■ We find that the city council never authorized Penn to acquire an interest in the appellees' property. The city council did approve the preparation of an easement document, along with other plans, in contemplation of acquiring an interest in the appellees' property and performing drainage construction; however, upon receiving these documents, the city council did not authorize the easement to be signed and construction to begin. Furthermore, even if the easement was valid, the agreement does not require that the contemplated drainage pipes be constructed, but only grants the City the right to perform such construction. We hold that there was insufficient evidence that Penn had the authority to acquire an interest in the appellees' property and obligate the City to perform drainage construction on this property.

The appellees also argue that the easement was a fulfillment of their prior agreement with Cox. They argue that in agreeing to allow the ditch to be dug, they relied upon Cox's commitment that the ditch was a temporary measure and that a permanent culvert would be installed later. However, as the City notes, the Collinses did not allege in the trial court that Cox's statements created an oral or implied contract with the appellees; instead, the Collinses alleged that the City breached the easement agreement.

The City also argues that apparent authority does not apply to a governmental entity; thus, even if Penn appeared to the appellees to have the apparent authority to bind the City to a contract, he could not do so. We agree that a sovereign is not bound by the unauthorized acts of its employees. *City of Russellville v. Hodges*, 330 Ark. 716, 957 S.W.2d 690 (1997).

Lastly, the City argues that there is no evidence that it ratified the easement agreement by any subsequent actions. In *City of Fort Smith v. Bates*, we held that "a contract illegally entered into or entered into without authority by agents or officers of a municipal corporation may be ratified and rendered binding upon the municipal corporation by affirmative action on its part, or some negative action, which of itself would amount to an approval of the contract." 260 Ark. 777, 544 S.W.2d 525 (1976) (citing *Day v. City of Malvern*, 195 Ark. 804, 114 S.W.2d 459 (1938)). The City of Fort Smith had utilized the property that was the subject of the agreement and carried out most of the terms of the agreement before ever questioning its validity. The supreme court held that this action constituted ratification and that the city was estopped from denying the terms of the agreement. The appellees here argue that the City ratified the easement agreement by enjoying the benefits of the easement, specifically the benefit of "no flooding of property in the Augusta Cove area subsequent to the digging of the ditch." The City, however, argues that there was only testimony that the appellees did not experience any more flooding due to the ditch; Collins did not testify that the entire Augusta Cove area benefited from the ditch in his yard. Furthermore, the City notes that the ditch had been dug nearly eight months prior to the signing of the easement; thus, any benefit the ditch bestowed on the City was not a result of the terms of the easement. We hold that the City did not ratify the ease-ment after it was signed because the City never approved the project or benefited from obtaining the easement.

We reverse the jury's verdict finding the City liable to the appellees. Accordingly, we find it unnecessary to address the City's argument that the trial court erred in rejecting its proffered jury instruction.

Reversed.

GLADWIN and ROBBINS, JJ., agree.