

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-14-674

TRICIA DUNDEE

APPELLANT

V.

BRENDA HORTON AND GEICO
GENERAL INSURANCE COMPANY

APPELLEES

Opinion Delivered December 2, 2015

APPEAL FROM THE SEBASTIAN
COUNTY CIRCUIT COURT,
GREENWOOD DISTRICT
[NOS. CV-11-1654, CV-13-147G]

HONORABLE JAMES O. COX,
JUDGE

REVERSED AND REMANDED

## LARRY D. VAUGHT, Judge

After appellee Brenda Horton rear-ended appellant Tricia Dundee in a motor-vehicle accident, Dundee filed a complaint for negligence against Horton. Horton admitted liability. At the conclusion of trial, a Sebastian County jury awarded Dundee damages in the amount of $14,100, and a judgment was entered on that verdict. On appeal,[1] Dundee argues that the trial court abused its discretion (1) in granting Horton's motions in limine excluding causation testimony from two of Dundee's medical providers, and (2) in denying her request to introduce a video into evidence. We reverse and remand.

Because Horton admitted liability, the only issues at trial were the amount of damages suffered by Dundee and whether they were proximately caused by Horton. Dundee was

---

[1]This is Dundee's second attempt to appeal from the judgment on the jury verdict. In *Dundee v. Horton*, 2015 Ark. App. 264, we ordered rebriefing due to deficiencies in Dundee's abstract and addendum. These deficiencies have been corrected.

initially treated by Patrick Walton, a physician assistant, for her neck, low back, left shoulder, and leg complaints. Walton referred Dundee to Dr. Cathy Luo, a pain-management physician. In their depositions, both Walton and Dr. Luo opined that the car accident was the cause of Dundee's injuries and her need for future treatment. Also, they testified that, while Dundee had not advised them of her prior low-back complaints, that information did not change their causation opinions.

Prior to trial, Horton moved to exclude the expert testimony of Walton and Dr. Luo that the car accident caused Dundee's injuries. Specifically, Horton argued that under Arkansas Rules of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the causation testimony of Walton and Dr. Luo lacked reliability because they did not have first-hand knowledge of the accident; they did not make any independent investigations regarding the accident; they were not experts in kinetics, biomechanics, physics, or engineering; and their opinions were based solely on the subjective statements of Dundee, which did not include her history of low-back complaints.

Dundee responded that both Dr. Luo and Walton were experts in their medical fields, they had significant experience in treating car-accident injuries, they viewed pictures of the vehicles involved in the accident, they treated and evaluated Dundee, and they had Dundee's history concerning the accident; therefore, their causation testimony was admissible under Arkansas Rule of Evidence 702 and *Daubert*. Dundee claimed that Horton's arguments went to the weight of the evidence, not its admissibility. The trial court granted the motions in limine, excluding all causation testimony of Dr. Luo and Walton.

At trial, Walton testified he earned an associate of applied science degree in surgical technology and for five years had practiced as a certified orthopedic technician assisting physicians during orthopedic surgeries. Thereafter, he earned a science degree as a physician assistant, which included radiology course work. He passed a national certification exam, was licensed by the Arkansas Medical Board, and had been practicing as a physician assistant the past seven years. He stated that he had treated approximately one hundred orthopedic patients who had been involved in motor-vehicle accidents.

Walton testified that his treatment of Dundee included requesting and interpreting x-rays; performing steroid injections; prescribing medication, a TENS unit, and physical therapy; and ordering an MRI. When conservative treatment failed, Walton referred Dundee to Dr. Joseph Queeney, a neurosurgeon. Dr. Queeney evaluated Dundee and opined that she was not a surgical candidate and had no objective evidence of nerve-root compression. He referred Dundee back to Walton, who then referred her to Dr. Luo.

Dr. Luo testified that she is a medical doctor specializing in pain management for the last seven years. Dr. Luo saw Dundee, who described her complaints, her medical history, and the motor-vehicle accident. Dr. Luo also reviewed Dundee's medical records, which included the MRI. Dr. Luo treated Dundee with multiple lumbar-epidural injections and said that Dundee will need injections for the rest of her life in order to manage her chronic pain. Dr. Lou also testified that Dundee will be required to see a pain-management doctor every three months for oral-medication review.

Horton admitted that she rear-ended Dundee. Horton added that "the collision was a very hard impact" that left her dazed and temporarily trapped in her vehicle. State Police

Trooper Billy Turnipseed, who investigated the motor-vehicle accident, testified that the force of the collision caused the air bags in both vehicles to deploy and that both vehicles had to be towed from the accident scene. Testimony from Dundee's children's youth pastor, two friends, two children, and her husband was similar, stating that before the accident, Dundee was pain free and very physically active; however, after the accident she suffered from pain and limited physical abilities.

Dundee testified that the impact from the accident was hard and that it caused her pain in her hip, head, shoulder, neck, and low back. She said that her medical expenses caused by the accident were $34,462.05. She stated that her pain affected her daily life and significantly limited her activities. She said that prior to the accident she had been pain free, which was why she did not tell her doctors about prior back pain. She also testified that her low-back pain in 2007 was due to an ovarian cyst, which had resolved.

Registered nurse Victoria Powell testified that she created a life-care plan for Dundee after reviewing her medical records, interviewing her, performing a nursing assessment, assigning a nursing diagnosis, and formulating a treatment plan. Economist Ralph Scott reviewed the life-care plan and testified that Dundee's economic losses from the accident totaled $509,935.88 ($361,502.22 in future medical expenses and $148,433.66 in lost household services).

The jury awarded Dundee damages in the amount of $14,100, and the trial court entered a judgment on the verdict. This appeal followed.

Dundee's first argument on appeal is that the trial court abused its discretion in excluding the testimony of her expert witnesses, Walton and Dr. Luo, that her injuries were

caused by the accident with Horton. Whether a witness qualifies as an expert in a particular field is a matter within the trial court's discretion, and we will not reverse such a decision absent an abuse of that discretion. *Graftenreed v. Seabaugh*, 100 Ark. App. 364, 371, 268 S.W.3d 905, 914 (2007). If an opponent of the expert testimony contends that the expert is not qualified, the opponent bears the burden of showing that the testimony should be stricken. *Id.* at 371–72, 268 S.W.3d at 914. An expert may, however, rely on information provided by others in the formulation of his opinion. *Id.* at 372, 268 S.W.3d at 914. If some reasonable basis exists demonstrating that a witness has knowledge of a subject beyond that of ordinary knowledge, the evidence is admissible as expert testimony. *Id.*, 268 S.W.3d at 914. There is a decided tendency to permit the fact-finder to hear the testimony of persons having superior knowledge in the given field, unless they are clearly lacking in training and experience. *Id.*, 268 S.W.3d at 914.

Arkansas Rule of Evidence 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Ark. R. Evid. 702 (2015). Rule 703 provides that the facts or data on which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. Ark. R. Evid. 703 (2015). Finally, Rule 704 provides that testimony in the form of an opinion otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact. Ark. R. Evid. 704 (2015).

SLIP OPINION

Under these rules, Walton and Dr. Luo's causation opinions qualify as expert-witness testimony. Walton worked as a certified surgical technician from 1998–2005, and in four of those years, specialized in orthopedic surgeries. He has worked as a physician assistant since 2006, and he has treated one hundred orthopedic patients who have been involved in motor-vehicle accidents. Dr. Luo, a medical doctor, has worked in the pain-management and rehabilitation specialty since 2005. Both have specialized knowledge with regard to the treatment of orthopedic injuries. Walton and Dr. Luo have been trained and educated in their medical specialties, are board certified, and are licensed to practice medicine in Arkansas. Both know how to read radiology reports. These two witnesses offered specialized information about orthopedic injuries and how they are caused beyond the common knowledge of the jury. Therefore, we hold that the trial court abused its discretion in excluding Walton's and Dr. Luo's opinion testimony on causation.

We reject Horton's argument that Walton and Dr. Luo's causation testimony is inadmissible because they are not experts in physics, vehicular biomechanics, engineering, or kinetics. While it is true that experts may not offer opinions that range too far outside their areas of expertise, if some reasonable basis exists demonstrating that a witness has knowledge of a subject beyond that of ordinary knowledge, the evidence is admissible as expert testimony. *Graftenreed*, 100 Ark. App. at 372, 268 S.W.3d at 914. Further, the fact that a medical expert is not a specialist in a particular field does not necessarily exclude him from offering testimony. *Id.* at 372, 268 S.W.3d at 914. Arkansas Rule of Evidence 702 expressly recognizes that an expert's testimony may be based on experience in addition to knowledge

and training. *Id.*, 268 S.W.3d at 914. Absolute expertise concerning a particular subject is not required to qualify a witness as an expert. *Id.*, 268 S.W.3d at 914.

In *Graftenreed*, also a car-accident case, our court affirmed the trial court's admission of testimony from a chiropractor about the permanency and probable cause of the plaintiff's neck and back injuries. 100 Ark. App. at 362, 268 S.W.3d at 914. The chiropractor in *Graftenreed* was not an expert in any of the areas Horton claims Walton and Dr. Luo must be experts in, yet the chiropractor was permitted to give his opinion on the probable cause of the plaintiff's injuries. *See also Tedder v. Am. Railcar Indus., Inc.*, 739 F.3d 1104, 1109 (8th Cir. 2014); *Kudabeck v. Kroger Co.*, 338 F.3d 856, 862 (8th Cir. 2003) (affirming the admission of causation testimony from the plaintiffs' treating physician/chiropractor, which was based on the medical providers' differential diagnoses, which included their observations, examination findings, testing, and other doctors' opinions); *Collins v. Hinton*, 327 Ark. 159, 167, 937 S.W.2d 164, 168 (1997) (affirming admission of causation testimony of treating chiropractor and orthopedic surgeon).

Accordingly, we hold that Walton and Dr. Luo did not have to be experts in physics, vehicular biomechanics, engineering, or kinetics to give expert causation testimony in this motor-vehicle-accident case. Their causation opinions did not require them to be experts in any field other than the ones in which they were unquestionably qualified. They were both practicing medicine in the field of orthopedics and had experience in treating patients who had suffered orthopedic injuries as a result of car accidents. They performed exams and tests and consulted with other doctors. The experience and training of Dr. Luo and Walton gave them insight into the subject beyond that of the ordinary person. This is a sufficient

foundation under our rules of evidence for the expert-witness causation testimony excluded by the trial court.

We also disagree with Horton's contention that Walton and Dr. Luo's opinions are unreliable and therefore inadmissible under *Daubert*. In *Daubert*, the Supreme Court held that when the trial court is faced with a proffer of expert scientific testimony, the trial court must determine whether the expert is proposing to testify to scientific knowledge that will assist the trier of fact to understand or determine a fact in issue. 509 U.S. at 592. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue. *Id.* at 592–93. The court held that a key consideration is whether the scientific theory or technique can be or has been tested. *Id.* at 593. Other considerations include whether the theory or technique has been subjected to peer review and publication, the potential rate of error, and the existence and maintenance of standards controlling the technique's operation. *Id.* at 593–94. Additionally, the Court recognized that general acceptance in the scientific community can have a bearing on the inquiry. *Id.* at 594.

In *Kumho Tire Co., Ltd. v. Carmichael*, the Supreme Court held that *Daubert's* general holding applies not only to testimony based on "scientific" knowledge, but also to testimony based on "technical" and "other specialized" knowledge. 526 U.S. 137, 141 (1999) (citing Fed. R. Evid. 702). The *Kumho* court also concluded that a trial court may consider one or more of the specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability. *Kumho*, 526 U.S. at 141. The *Daubert* test of reliability is "flexible," and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in

SLIP OPINION

every case. *Id.* at 141–42. The factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony. *Id.* at 150. In other words, not all expert testimony is subject to the *Daubert* analysis.

In the instant case, we conclude that it was not necessary for the trial court to engage in a *Daubert* analysis relating to the reliability of Walton's and Dr. Luo's causation opinions. In reaching their opinions, Walton and Dr. Luo did not employ any novel scientific evidence, theories, or methodology. Rather, their opinions were based on their experience, training, observations, other medical providers' opinions, and generally accepted testing. *See Graftenreed*, 100 Ark. App. at 374, 268 S.W.3d at 915 (holding that the *Daubert* analysis was applicable only to "novel" scientific evidence, theory, or methodology); *Arrow Intern., Inc. v. Sparks*, 81 Ark. App. 42, 52, 98 S.W.3d 48, 55 (2003) (holding that the *Daubert* inquiry was not applicable where the physician's expert testimony was not based on "novel" scientific evidence, theory, or methodology but rather on his experience and observations).

Finally, we disagree with Horton's claim that the causation testimony of Walton and Dr. Luo is unreliable because they solely relied on Dundee's subjective complaints, her history of the accident, and her "false medical history." Walton and Dr. Luo testified that they reached their causation opinions based on the history provided by Dundee, their examinations of her, the results of their examinations and objective testing, their review of other medical providers' opinions who treated her (her physical therapist, her family physician, and Dr. Queeney), their review of photographs of the vehicles involved in the accident, and their review of her past medical records. We hold that this is a sufficient

foundation for the causation opinions of Walton and Dr. Luo and that the trial court abused its discretion in excluding their opinions.[2]

However, a mere showing that the trial court made an error regarding the admissibility of evidence will not support a reversal, absent a showing of prejudice. *Olivares v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 94, at 1–2. Without a showing of prejudice, any judicial error as to the admissibility of evidence is harmless error and cannot be grounds for disturbing a trial court's order. *Id.* at 2; *see also* Ark. R. Civ. P. 61 (2015).

The trial court's exclusion of the causation testimony of Dundee's medical providers prejudiced her. To establish a prima facie case of negligence, a plaintiff must demonstrate that the defendant breached a standard of care, that damages were sustained, and that the defendant's actions were a proximate cause of those damages. *Wal-Mart Stores, Inc. v. Kilgore*, 85 Ark. App. 231, 236, 148 S.W.3d 754, 757 (2004). Because Horton admitted liability, Dundee was only required to prove that she sustained damages and that Horton's actions were a proximate cause of those damages. However, based on the trial court's exclusion of the causation testimony of Walton and Dr. Luo, Dundee was precluded from presenting a crucial element of her claim—that her injuries were caused by the accident for which Horton admitted liability. Her treating physicians were not permitted to give their opinions that the

---

[2]Horton's arguments go to the weight and credibility of the testimony of Walton and Dr. Luo. "Once an expert witness is qualified, the weakness in the factual underpinning of the expert's opinion may be developed upon cross-examination and such weakness goes to the weight and credibility of the expert's testimony." *Jackson v. Buchman*, 338 Ark. 467, 474, 996 S.W.2d 30, 34 (1999) (citing *Suggs v. State*, 322 Ark. 40, 43, 907 S.W.2d 124, 126 (1995); *Polk v. Ford Motor Co.*, 529 F.2d 259 (8th Cir.), *cert. denied*, 426 U.S. 907 (1976)). While Horton's arguments are fodder for cross-examination, they do not go to the admissibility of the testimony.

cause of her pain and need for treatment was the accident. Therefore, we hold that Dundee was prejudiced by the trial court's error in excluding the causation testimony of Walton and Dr. Luo. Accordingly, we hold that the trial court abused its discretion in granting Horton's motions in limine excluding Walton and Dr. Luo's causation testimony and that the error prejudiced Dundee. We reverse and remand on this issue.

For her second point on appeal, Dundee argues that the trial court abused its discretion in refusing to allow her to introduce into evidence a video that was shown to her during her cross-examination. Horton's counsel showed Dundee a video posted on her Facebook account that purportedly showed her playing with her fourteen-month-old grandchild. Horton's counsel did not introduce the video into evidence or show it to the jury. On redirect, Dundee's counsel asked to introduce the video into evidence; however, Horton's counsel objected, stating that the trial court had previously granted a motion in limine precluding the parties "from pulling things out of each other's files." The trial court denied Dundee's request to introduce the video, stating that "that is exactly like pulling something out of somebody's file."

Dundee argues on appeal that the trial court abused its discretion when it refused her request to introduce the video. She contends that the video was relevant because it showed her physical limitations caused by the accident and that exclusion of the video was prejudicial because it insinuated that what was depicted on the video contradicted her testimony about her physical limitations.

Because we are reversing and remanding based on Dundee's first point on appeal, it is speculative whether the evidentiary issue surrounding the video will reoccur on remand.

SLIP OPINION

Therefore, we will not address the point. *Bradford v. State*, 325 Ark. 278, 290, 927 S.W.2d 329, 335 (1996). *See also Fauna v. State*, 265 Ark. 934, 936, 582 S.W.2d 18, 19 (1979) (holding that we need not address errors alleged on appeal that are not likely to reoccur on remand).

Reversed and remanded.

GRUBER and BROWN, JJ., agree.

*Chaney Law Firm, P.A.*, by: *Don P. Chaney*, *Nathan Price Chaney*, *S. Taylor Chaney*, and *Hilary M. Chaney*, for appellant.

*Robinson Law Firm*, by: *Jon P. Robinson*, for appellee.