



# SUPREME COURT OF ARKANSAS

No. CR–13–359

| | | |
|---|---|---|
| SANDERS M. CARTER | | **Opinion Delivered** February 26, 2015 |
| | APPELLANT | |
| | | APPEAL FROM THE PULASKI |
| V. | | COUNTY CIRCUIT COURT |
| | | [NO. CR–1987–63] |
| STATE OF ARKANSAS | | HONORABLE HERBERT THOMAS |
| | APPELLEE | WRIGHT, JR., JUDGE |
| | | <u>REVERSED AND REMANDED</u>. |

**JIM HANNAH, Chief Justice**

Appellant, Sanders M. Carter, appeals from the circuit court's denial of his motion for postconviction forensic DNA testing pursuant to Arkansas Code Annotated sections 16–112–201 to –208 (Repl. 2006). We reverse and remand for an evidentiary hearing.

The following facts, except where supplemented in footnote 1, were recited by this court on direct appeal:

> On November 18, 1986, a criminal committed the felonies of rape and aggravated robbery of the prosecutrix and the burglary of her home. During the forty to forty-five minute ordeal, the criminal, who had entered the home through a kitchen window off a deck, threatened to kill the prosecutrix with a knife, and also told her that if she called the police he would come back at a later time and slit her throat. In spite of his threat, she called the police, reported the crimes, and gave a description of the criminal.[1]

---

[1]Detective Ronnie Smith of the Little Rock Police Department responded to the scene on November 18, 1986, and he testified that, while there, he recovered a knife that was lying in the grass on the north side of the victim's home. The knife was admitted into evidence at trial and identified by the victim as the knife used by Carter during the rape,

One night about a month and one-half later, on January 4, 1987, she heard someone on the deck and saw a man pass by the window. She called the police and they immediately caught the appellant on the deck. Later that day, and again at trial, she identified the appellant as the person who had committed the earlier rape, aggravated robbery, and burglary. The appellant was charged with those three felonies and was also charged with the later attempted burglary. The attempted burglary charge was severed and later dismissed.

*Carter v. State*, 295 Ark. 218, 220, 748 S.W.2d 127, 127 (1988). On June 3, 1987, Carter was convicted of rape, aggravated robbery with a deadly weapon, and burglary. For his convictions, Carter was sentenced as a habitual offender to consecutive terms of imprisonment totaling life plus forty years. This court affirmed on direct appeal. *See id.*, 748 S.W.2d at 127. Carter subsequently filed numerous unsuccessful petitions for postconviction relief.[2]

On May 16, 2012, Carter filed a motion for postconviction forensic DNA testing and requested that he be allowed to conduct DNA testing of so-called "touch DNA" purportedly

---

aggravated robbery, and burglary.

[2]*See Carter v. State*, CR–87–209, 1989 WL 121061 (Ark. Oct. 16, 1989) (unpublished per curiam) (rejecting petition to pursue Rule 37 relief in circuit court); *Carter v. State*, CR–90–187, 1990 WL 175927 (Ark. Nov. 5, 1990) (unpublished per curiam) (dismissing appeal of circuit court's order denying habeas corpus relief); *Carter v. State*, CR–03–148, 2004 WL 309063 (Ark. Feb. 19, 2004) (unpublished per curiam) (affirming circuit court's denial of petition for further scientific testing of evidence collected at the crime scene because the evidence either no longer existed or could not be located); *Carter v. Norris*, 367 Ark. 360, 240 S.W.3d 124 (2006) (per curiam) (affirming circuit court's denial of petition for habeas corpus relief); *Carter v. State*, 2010 Ark. 29 (per curiam) (affirming circuit court's denial of successive petition for further scientific testing of hairs collected at the crime scene because Carter did not offer a factual basis for his claim that the evidence was available with an unbroken chain of custody); *Carter v. State*, 2011 Ark. 481 (per curiam) (denying petition to reinvest jurisdiction in the circuit court to consider a petition for writ of error coram nobis).

SLIP OPINION

located on the handle of the knife that was admitted into evidence at trial and identified by the victim as the knife Carter used during the rape, aggravated robbery, and burglary. Carter alleged that DNA testing of the knife could produce evidence materially relevant to his assertion of actual innocence. The State responded that Carter was not entitled to relief because he failed to satisfy the statutory requirements for postconviction DNA testing.

The circuit court denied the motion without a hearing and ruled that Carter was entitled to no relief because he (1) failed to satisfy the chain-of-custody requirements of section 16-112-202(4), (2) failed to satisfy the timeliness requirement of section 16-112-202(10), and (3) failed to demonstrate that he should be permitted to file a subsequent petition for postconviction relief. Carter appeals.

In appeals of postconviction proceedings, we will not reverse a circuit court's decision granting or denying postconviction relief unless it is clearly erroneous. *E.g.*, *Pankau v. State*, 2013 Ark. 162, at 5. A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id*. The same standard of review applies when a circuit court denies DNA testing under Arkansas Code Annotated sections 16-122-201 to-208. *Id*. Unless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief, the court shall promptly set an early hearing on the petition and response, promptly determine the issues, make findings of fact and conclusions of law, and either deny the petition or enter an order granting the appropriate relief. Ark. Code Ann. § 16-122-205(a).

Except when direct appeal is available, a person convicted of a crime may make a motion for the performance of . . . DNA testing, or other tests which may become available through advances in technology to demonstrate the person's actual innocence if a number of requirements are satisfied. *See* Ark. Code Ann. § 16-122-202. The statutory requirements at issue in this case are chain of custody and timeliness.

## I. *Chain of Custody*

Section 16-112-202(4) requires demonstration that "[t]he specific evidence to be tested is in the possession of the state and has been subject to a chain of custody and retained under conditions sufficient to ensure that the evidence has not been substituted, contaminated, tampered with, replaced, or altered in any respect material to the proposed testing." The statute has three components: the requirement that the specific evidence to be tested is in the possession of the State, the requirement of chain of custody, and the requirement that there has been no alteration of evidence material to DNA testing. *See United States v. Fasano*, 577 F.3d 572, 576 (5th Cir. 2009) (construing chain–of–custody requirements under 18 U.S.C. § 3600(a)(4) of the Innocence Protection Act of 2004).[3] Carter alleged in his petition that the Little Rock Police Department recovered the knife

---

[3]The Innocence Protection Act of 2004, codified at 18 U.S.C. § 3600, "allows federal prisoners to move for court-ordered DNA testing under certain specified conditions." *See Dist. Atty's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 63 (2009). An applicant seeking DNA testing under the Innocence Protection Act must demonstrate, inter alia, that "[t]he specific evidence to be tested is in the possession of the Government and has been subject to a chain of custody and retained under conditions sufficient to ensure that such evidence has not been substituted, contaminated, tampered with, replaced, or altered in any respect material to the proposed DNA testing." 18 U.S.C. § 3600(a)(4).

SLIP OPINION

from the scene and sent it to the Arkansas State Crime Laboratory, which then returned it to the Little Rock Police Department. Carter further alleged that the knife was admitted into evidence as Exhibit 6 at his trial and then delivered to this court's office of the clerk in 1987 when the record was lodged in his direct appeal. Finally, Carter alleged that in August 2011, he confirmed through a telephone conversation with a clerk's office employee that the clerk's office was still in possession of the knife.

The State responded that Carter failed to satisfy the chain-of-custody requirements because the knife was "introduced at trial as an exhibit and therefore could have been and was held by any number of people, including the prosecutor, detective, judge, bailiff, court reporter, and jurors, who did not wear gloves," and because the knife "was sent with the trial transcript to the Arkansas Supreme Court where it was held in a manila envelope which became torn at some point." In addition, the State averred that the knife "was . . . sent to the prosecutor's office when it requested the transcript in this matter, thereby showing that anyone who viewed the transcript in this matter or handled the transcript could have touched the knife."

In its order denying relief, the circuit court found that the knife had been delivered to this court's office of the clerk when the record was lodged in Carter's direct appeal on December 1, 1987, and that the transcript has been available for checkout. Further, the circuit court found that the records of the clerk's office "reflect that the appellate transcript, including the knife, has been checked out and removed from the custody of that office on

at least three occasions since 2002."[4] Accordingly, the circuit court ruled that Carter had failed to meet the chain-of-custody requirements of section 16-112-202(4).

We conclude that the circuit court erred in failing to hold an evidentiary hearing to determine whether Carter satisfied the chain-of-custody requirements of section 16-112-202(4). Carter alleged in his petition that the knife was in the possession of the State, that the knife had been subject to a chain of custody, and that the knife had been retained under sufficient conditions. The State agreed that the knife was in the possession of the State, but it maintained that the chain of custody had been compromised because the knife "could have been and was held by any number of people." As Carter points out, the State presented no documentation to support its claim that a break in the chain of custody had occurred and it presented no evidence to support its claim that the knife had not been retained under conditions sufficient to ensure that it had not been contaminated, tampered with, or altered in any respect material to the proposed testing. In addition, because no hearing was held, Carter had no opportunity to disprove the State's claim that a break in the chain of custody had occurred, and he had no opportunity to present evidence regarding the ability—via modern DNA testing procedures—to obtain probative results from the evidence despite the conditions of retention. We hold that, under the facts of this case, the dispute over chain-of-custody requirements must be resolved in an evidentiary hearing.

## II. *Timeliness*

A motion for postconviction DNA testing must be made in a timely fashion. Ark.

---

[4]There is no evidence in the record to support this finding.

Code Ann. § 16‑122‑202(10). There is a rebuttable presumption against timeliness for testing if the motion is not made within thirty‑six months of the conviction. *Id.* § 16‑122‑202(10)(B). The presumption may be rebutted upon a showing (1) that the movant was or is incompetent and the incompetence substantially contributed to the delay in the motion for a test, (2) that the evidence to be tested is newly discovered evidence, (3) that the motion is not based solely upon the movant's own assertion of innocence and a denial of the motion would result in a manifest injustice, (4) that a new method of technology that is substantially more probative than prior testing is available; (5) or good cause. *Id.* § 16‑122‑202(10)(B)(i)−(v).

Carter was convicted in 1987, and he filed his motion in 2012. A rebuttable presumption therefore arose that the motion was untimely filed. The circuit court found that Carter's request for DNA testing was untimely because he had known about the existence of the knife since June 3, 1987, when it was admitted into evidence at his trial.

To rebut a presumption against untimeliness, a petitioner need only satisfy one of the enumerated bases for rebuttal. Here, Carter rebutted the presumption against untimeliness by showing that a new method of technology that is substantially more probative than prior testing is available. *See* Ark. Code Ann. § 16‑122‑202(10)(B)(iv). Carter was convicted in 1987, and in a previous petition, he presented evidence that DNA testing was unavailable at the Arkansas State Crime Laboratory at that time. *See Carter v. State*, CR‑03‑148, 2004 WL 309063, at ★1 (Ark. Feb. 19, 2004) (unpublished per curiam). This court has observed that DNA profiles have been admissible evidence in Arkansas since 1991. *See Whitfield v. State*,

SLIP OPINION

346 Ark. 43, 45, 56 S.W.3d 357, 358 (2001) (citing *Prater v. State*, 307 Ark. 180, 820 S.W.2d 429 (1991)). Carter asserts that, because no DNA testing methods were available at the time of his trial, today's DNA testing methods are, by definition, substantially more probative.

The State contends that, even accepting Carter's representations regarding the availability of STR testing in Arkansas—1996—and Y-STR testing—2007— his motion still fails to overcome the presumption of untimeliness because he could have verified the knife's location at any time after those dates by a simple phone call to the clerk of this court and petitioned to have the knife tested using those technologies. We disagree. Despite the State's assertion to the contrary, the statute imposes no time limitation for rebutting a presumption against timeliness. *See* Ark. Code Ann. § 16–112–202(10)(B). We hold that the circuit court erred in finding that Carter failed to meet the timeliness requirement of section 16–112–202(10).

### III. *Successive Petition*

Carter contends that the circuit court abused its discretion in failing to permit him to file a subsequent petition under section 16–112–205(d), which states that the "court may summarily deny a second or successive petition for similar relief on behalf of the same petitioner and may summarily deny a petition if the issues raised in it have previously been decided by . . . the Arkansas Supreme Court in the same case." The State correctly points out that the circuit court did not "summarily deny" Carter's motion because it considered and ruled on his arguments regarding the chain of custody and timeliness. To the extent that the circuit court ruled that Carter was not entitled to seek postconviction forensic DNA

8

testing because his motion in this case amounted to a successive petition for similar relief, we disagree. Carter's previous petitions did not request the use of the DNA technologies at issue here, specifically STR and Y-STR testing.

Because the files and records in this case do not conclusively show that no relief was warranted, we reverse the circuit court's denial of Carter's motion for postconviction forensic DNA testing, and we remand to the circuit court to conduct a hearing on the motion. In holding a hearing on the motion, the circuit court can consider the issues discussed in this appeal and determine whether each of the other statutory requirements have been met such that testing shall be ordered.

Reversed and remanded.

*Karen Thompson*, The Innocence Project, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Christian Harris*, Ass't Att'y Gen., for appellee.