Cite as 2023 Ark. App. 177

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR-22-368

|  |  |  |
|---|---|---|
| KENNY WALDEN | APPELLANT | Opinion Delivered March 29, 2023<br><br>APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26CR-18-505] |
| V. |  |  |
| STATE OF ARKANSAS | APPELLEE | HONORABLE RALPH C. OHM, JUDGE<br><br>AFFIRMED |

**WENDY SCHOLTENS WOOD, Judge**

Kenny Walden appeals the sentencing order entered by the Garland County Circuit Court convicting him of two counts of raping his minor child (MC) and sentencing him to two consecutive terms of forty years' imprisonment. On appeal, Walden argues that the evidence was insufficient to support the convictions and that the circuit court abused its discretion by allowing a forensic interviewer to testify as an expert witness. We affirm.

In 2018, Walden was charged with two counts of raping MC between April 15, 2017, and April 1, 2018. At Walden's trial, the evidence showed that when MC was thirteen years old and in seventh grade, she confided in a friend that her father had raped her. Her friend disclosed this information in a note delivered to a school counselor, and the allegations were reported to police through the Arkansas Child Abuse Hotline on April 9, 2018. The

following day, MC was referred to the Child Advocacy Center (CAC) in Hot Springs for a forensic interview and a sexual-assault examination.

Morgan Stidham, a forensic interviewer at the CAC, conducted the interview. At trial, after Stidham testified about her training and experience in the field of forensic interviewing, the State moved to qualify her as an expert witness. The defense objected, arguing that Stidham was merely a fact witness and that qualifying her as an expert would improperly bolster her testimony. The State responded that Stidham was qualified by her specialized training and experience and would testify about disclosures in cases of child sexual abuse. The State explained that the defense had suggested that MC told people her father was molesting her because she was upset that her parents might divorce. The State argued that Stidham's expected testimony—that MC's disclosure was classified as accidental and not intentional—was relevant to that issue. The circuit court overruled Walden's objection and qualified Stidham as an expert witness.

Stidham proceeded to testify that she utilizes a neutral, structured interview process that is designed to elicit accurate and complete information about an event and that the interview is videotaped for other professionals to use so that the child will not have to endure repeated questioning. Stidham explained the structured phases of the interview process, the dynamics of how children disclose abuse, and the types of memories and details they may provide about it. With respect to MC's demeanor during the interview, Stidham said she was talkative and "used her hands a lot" during the rapport-building phase, which involves talking about an activity the child likes. She said MC remained consistent and sincere

throughout the interview, but during the second phase of it—the substantive phase involving disclosure of memories of the abuse—MC put her head down, was more quiet, and put her hands in her lap. Without discussing the substance of MC's disclosure, Stidham testified that MC disclosed episodic memories of the abuse, including sensory and peripheral details. She further testified that disclosure is a process, and it was her professional opinion that MC's disclosure of the abuse had been accidental, meaning MC told someone about it without any intention that the person would do something about it.

MC testified that she was born on April 15, 2004, and that not long after she had turned thirteen her father raped her. She testified about three specific incidents and said these were not the only times her father had raped her. The first incident occurred within a month after her thirteenth birthday while her mother was at work. She was preparing to take a shower and had undressed and was checking the temperature of the water when Walden walked in, grabbed her by the waist, and carried her to the bed. She said he "took his shorts off, got on the bed, and put his penis inside [her] vagina." He "moved back and forth" and "[s]omething white" came out of his penis. He then put his shorts on "and went on with his day." MC said the last time Walden raped her was a couple of weeks before her interview at the CAC, which occurred on April 10, 2018. Her mother was at work, and Walden again walked into the bathroom when MC was undressed and preparing to shower. He told her his penis hurt, and he wanted a hug; he then carried her to the bed and, again, put his penis inside her vagina. MC described a third incident in which her father had intercourse with her while she was on the couch after he had given her a massage. She said she was drifting

3

in and out of sleep, and he placed one of her legs on the floor. She said he then put his penis in her vagina and "moved back and forth."

Mary Jo Selig, a sexual-assault nurse, examined MC at the CAC on April 12. Selig testified that MC had trichomonas vaginalis, a sexually transmitted disease. She also testified that MC had no injury to her hymen but had a superficial abrasion at the opening to her vagina that bled during the examination. Selig said that the skin in that area had become "friable" because of exposure to the discharge caused by the sexually transmitted disease. She said the abrasion could have been caused by a penetrating injury that never healed due to the discharge, or it could have been from wiping because the skin had become so fragile from the discharge.

Dr. Sarah Sullivan testified that Walden also tested positive for trichomonas vaginalis. Dr. Karen Farst testified as an expert in child-abuse pediatrics. She said that Walden's positive test for trichomonas was "highly corroborative" of MC's disclosure that she had been sexually abused by her father. She said the only way to transmit trichomonas vaginalis is by contact between the fresh secretions from the genital tract of an infected person with the genitalia of a noninfected person. When asked if trichomonas can be transmitted by poor hygiene and sharing towels, she said it is highly unlikely because trichomonas cannot survive long outside the genital tract. She agreed that it is possible to transmit it by co-bathing, but she said she saw no evidence of co-bathing in her review of the records and that if there was a history that the family bathed together, she would still make a medical diagnosis of sexual abuse if a child in the family had a trichomonas infection.

Walden testified in his own defense. He denied that he raped MC and said that she was lying. The jury convicted him on both counts of rape, and this appeal followed.

On appeal, Walden first argues that the evidence is insufficient to support his convictions. To determine whether evidence is sufficient to support a conviction, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *King v. State*, 2018 Ark. App. 572, at 5, 564 S.W.3d 563, 566. We affirm if the evidence is substantial. *Id.*, 564 S.W.3d at 566. Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.*, 564 S.W.3d at 566–67.

A person commits rape if he or she engages in sexual intercourse or deviate sexual activity with another person who is less than fourteen years of age. Ark. Code Ann. § 5-14-103(a)(3)(A) (Supp. 2017). Sexual intercourse is defined as penetration, however slight, of the labia majora by a penis. Ark. Code Ann. § 5-14-101(12) (Supp. 2017).[1]

Walden argues that the evidence is insufficient because the State failed to provide "any days, dates, or specific times" when the crimes of rape occurred. However, MC's

---

[1]Arkansas Code Annotated sections 5-14-101 and 5-14-103 were amended in 2017, with an effective date of August 1, 2017, which fell between the date of the first act of rape described by MC and the final act of rape. The statute in effect when a criminal offense is committed applies to a prosecution for that offense. *Holt v. State*, 85 Ark. App. 151, 154, 147 S.W.3d 699, 701 (2004); *see also* Ark. Code Ann. § 5-1-103(e) (Repl. 2013). The 2017 amendments to these statutes, however, did not change the substantive formulation of rape under which Walden was prosecuted. *Compare* Ark. Code Ann. §§ 5-14-101(11) and 5-14-103(a)(3)(A) (Repl. 2013) *with* Ark. Code Ann. §§ 5-14-101(12) and 5-14-103(a)(3)(A) (Supp. 2017). The amendments, therefore, have no bearing on Walden's sufficiency argument.

5

testimony was sufficient to demonstrate when the offenses occurred. She provided her birthdate and said that Walden first raped her within a month after she turned thirteen (on April 15, 2017). She testified that the last time Walden raped her was a couple of weeks before her interview at the CAC, which occurred on April 10, 2018.[2] The State did not have to prove specifically when each act of rape occurred because time is not an essential element of the crime of rape. *Burnside v. State*, 2015 Ark. App. 550, at 2–3, 472 S.W.3d 497, 499. We hold that the evidence is sufficient to demonstrate the acts of rape occurred during the relevant times stated in the criminal information: from April 15, 2017, to April 1, 2018.

Walden further argues that the evidence of rape was insufficient because there was no injury to MC's hymen and because the abrasion on her vaginal tissue as well as the sexually transmitted disease could have been caused by something other than sexual intercourse. This argument essentially asks that we reweigh the evidence in Walden's favor, which is something we cannot do. When reviewing a challenge to the sufficiency of the evidence, this court views the evidence and all reasonable inferences deducible from it in the light most favorable to the verdict, without weighing it against conflicting evidence that may be favorable to the appellant. *Dail v. State*, 2013 Ark. App. 184, at 2. In cases of rape, the evidence is sufficient if the victim's testimony satisfies the statutory elements. *Burnside*, 2015 Ark. App. 550, at 2–3, 472 S.W.3d at 499. Here MC testified that Walden raped her more than three times when she was thirteen years old by putting his penis inside her vagina. Her

---

[2]Walden conceded in closing argument to the jury that the State proved the element that MC was under the age of fourteen at the times of the criminal acts in question.

testimony was explicit and unequivocal. Standing alone, it was sufficient to support Walden's convictions without the additional evidence that they were both infected with trichomonas and that MC had an abrasion on her vaginal tissue. We hold that substantial evidence supports Walden's convictions.

Walden next contends that the circuit court abused its discretion by declaring Stidham an expert witness. He argues that Stidham was merely a fact witness who interviewed the victim, Stidham offered no opinion regarding the ultimate issue, and qualifying her as an expert bolstered her testimony.

A circuit court enjoys broad discretion to admit expert testimony, and we will not reverse absent a manifest abuse of that discretion and a showing of prejudice. *Harper v. State*, 2019 Ark. App. 163, at 5, 573 S.W.3d 596, 600. Rule 702 of the Arkansas Rules of Evidence provides that if specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise. Ark. R. Evid. 702 (2022). If there is a reasonable basis for the circuit court to conclude that the witness has knowledge of the subject beyond ordinary knowledge, the evidence is admissible as expert testimony. *Turbyfill v. State*, 92 Ark. App. 145, 154, 211 S.W.3d 557, 562 (2005). And if the circuit court determines the expert testimony will assist the trier of fact in understanding the evidence presented or in determining a fact in issue, the circuit court must qualify the witness as an expert and admit her testimony. *Britt v. State*, 2019 Ark. App. 145, at 6–7, 573 S.W.3d 567, 571.

Applying the foregoing principles, we first note that Walden does not dispute that Stidham possesses specialized knowledge in forensic interviewing. She testified that in addition to her degree in psychology, she has specialized training in the field of child maltreatment and forensic interviewing, has conducted over nine hundred forensic interviews, and has previously testified as an expert witness.

We reject Walden's argument that qualifying Stidham as an expert witness was an abuse of discretion because its sole purpose was to bolster Stidham's testimony as a fact witness. He cites no authority for this argument, and we note that the State did provide a reasonable basis to qualify Stidham as an expert witness. The State sought to have Stidham qualified as an expert for the purpose of rendering an opinion relevant to MC's disclosure. Stidham testified generally about the neutral, structured interview process and explained the types of disclosures child victims typically make and the types of memories and details they relate. She testified that MC's disclosure was of an accidental type. We hold that this was proper expert testimony in that it was based on Stidham's specialized knowledge, skill, and training, and it aided the trier of fact. Therefore, we cannot say that the circuit court abused its discretion in qualifying Stidham as an expert witness. *See Harper*, 2019 Ark. App. 163, at 6–7, 573 S.W.3d at 600–01 (holding that testimony about how forensic interviews are conducted and about common characteristics of child sex-abuse victims—given by one who interviewed the child-abuse victim—was proper expert-witness testimony); *see also Sweeten v. State*, 2018 Ark. App. 590, at 4–5, 564 S.W.3d 575, 578–79 (affirming the circuit court's

decision to qualify the forensic interviewer as an expert witness because the jury was entitled to understand what forensic interviewers look for in an interview).

Finally, Walden argues for the first time on appeal that Stidham's testimony improperly bolstered MC's credibility. We do not reach the argument because it was not raised below. Arguments not raised at trial will not be addressed for the first time on appeal. *Marsh v. State*, 2020 Ark. App. 269, at 2 (objection to forensic interviewer's qualification as an expert was insufficient to preserve argument that interviewer's subsequent testimony, to which no objection was made, improperly bolstered the victim's credibility).

For the reasons set forth above, we affirm Walden's rape convictions.

Affirmed.

KLAPPENBACH and HIXSON, JJ., agree.

*Josh Q. Hurst* and *Justin B. Hurst*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jacob H. Jones*, Ass't Att'y Gen., for appellee.