Cite as 2025 Ark. App. 412

# ARKANSAS COURT OF APPEALS
### DIVISION III
No. CR-24-383

| | |
|---|---|
| JOHN BRITT<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered September 10, 2025<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT<br>[NO. 04CR-16-2178]<br><br>HONORABLE BRAD KARREN, JUDGE<br><br>AFFIRMED |

## BART F. VIRDEN, Judge

Appellant John Britt appeals from the Benton County Circuit Court's order denying his petition for postconviction relief pursuant to Ark. R. Crim. P. 37.1. Britt argues on appeal that his trial counsel were ineffective in that they (1) failed to properly challenge the admissibility of the State's DNA evidence under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); (2) failed to consult with an expert before filing a motion in connection with the *Daubert* hearing; (3) failed to ensure that the defense expert was adequately prepared prior to the *Daubert* hearing; (4) presented damaging DNA-related testimony from his own expert; (5) failed to properly cross-examine the State's DNA experts at trial; (6) failed to present expert DNA testimony on his behalf at trial; and (7) failed to adequately or properly attack the statistical evidence presented by the State's expert at trial. We affirm the trial court's denial of relief.

## I. *Procedural Background*

In January 2017, Britt was charged with raping his then thirteen-year-old daughter. A rape kit was performed, and DNA material from the minor child's (MC's) body and her clothing were sent to the Arkansas State Crime Laboratory ("crime lab") for testing. Because insufficient DNA material was present on the samples provided, the more common autosomal DNA testing could not be done; instead, Y-STR testing was performed. "Y-STR" means short tandem repeat of the Y chromosome. *Britt v. State*, 2019 Ark. App. 145, at 1 n.1, 573 S.W.3d 567, 568 n.1 ("*Britt I*"). Y-STR testing amplifies the male Y chromosome and excludes those men who do not share the same paternal lineage. *Id.* at 2, 573 S.W.3d at 569. The profiles created from the samples of DNA material from MC's body and clothing using the Y-STR testing were consistent with Britt's profile created through autosomal testing of a known sample of Britt's DNA.

Britt filed a motion requesting a *Daubert* hearing to challenge the admissibility of expert testimony with respect to Y-STR testing of the DNA evidence. Under *Daubert*, the trial court must make a preliminary assessment of whether the reasoning or methodology underlying expert testimony is valid and whether the reasoning and methodology used by the expert has been properly applied to the facts in the case. The trial court granted Britt's request for a hearing. At the hearing, Britt presented testimony from Mary Robinette, a retired chemist formerly employed by the crime lab. Robinette testified generally that Y-STR is a valid science and said that Y-STR testing plays "a great role" in forensics. She also

2

explained the limitations of Y-STR testing and expressed concerns with the testing in this case. Robinette noted possible cross-contamination due to the rushed process and confusion over the source of the statistics. The trial court ultimately denied Britt's motion to exclude the DNA evidence after finding that Y-STR testing is reliable and that expert testimony on the subject could be helpful to the jury.

At trial, the State presented testimony by Julie Butler, the DNA analyst who tested the samples in this case, and Ada LeDoux, a serologist. The State also presented testimony by the victim. MC testified that Britt forced her to perform oral sex on him and that it later progressed to vaginal intercourse. Britt did not call Robinette or any other DNA expert at trial. Britt and his wife, Hannah, testified. A jury found Britt guilty of rape, and he was sentenced to forty years' imprisonment. He filed an appeal, challenging the admissibility of expert testimony regarding the Y-STR testing of the DNA evidence. We affirmed his conviction in *Britt I*.

Britt subsequently filed a petition for postconviction relief pursuant to Rule 37. He was granted permission to amend his petition. He sought an extension to hire a DNA expert, but the trial court denied his request. Before filing his amended petition, Britt moved for a continuance so that his recently hired DNA expert could review the evidence. The trial court denied this request as well. The trial court then denied Britt's Rule 37 petition without an evidentiary hearing. Britt appealed, and we reversed and remanded because the trial court erred in finding that time constraints prevented it from granting Britt's motion to file an

enlarged petition and further erred by applying the wrong standard for granting or denying an evidentiary hearing. *Britt v. State*, 2022 Ark. App. 58, 639 S.W.3d 919 ("*Britt II*").

On remand, Britt filed his amended Rule 37 petition, raising the arguments he now raises on appeal, and the trial court held an evidentiary hearing at which Britt called Kevin Lammers and Sam Hall, the Benton County public defenders who had been appointed to represent him. Britt also called Mehul Anjaria to testify about the DNA evidence. The State presented two witnesses from the crime lab: Mandi Wertenberger, a forensic serologist and physical-evidence supervisor, and Jennifer Beaty, supervisor of the forensic DNA section. Relevant to Britt's arguments on appeal from the denial of his Rule 37 petition is the following testimony from the evidentiary hearing:

Lammers testified that he did not recall having any direct participation in the preparation for the *Daubert* hearing. Lammers testified that he thought that filing the motion was sufficient to preserve the issue for appeal and that it was "not something that I anticipated as being a waiver." He stated that the court of appeals appeared to have considered the issue even though the *Daubert* factors were not argued, so the matter was preserved to some extent. Lammers admitted that he and Hall could have done a better job with a few things—for example, the selection of an expert for the *Daubert* hearing. He testified that he did not think Robinette's testimony was helpful to Britt but said they moved on after the *Daubert* hearing to focus on cross-examining the State's expert on the reliability of the Y-STR testing of evidence and the possibility of cross-contamination. Lammers testified that they sought to show the limitations of Y-STR testing and how it was useful for excluding

4

suspects but not for identifying them. He said that they focused on trying to keep out the Y-STR DNA evidence through Arkansas Rule of Evidence 403 instead of *Daubert* because of its confusing nature and because a jury was likely to simply seize on its being "DNA evidence" without understanding the Y-STR testing. Lammers pointed out that, aside from the admission of the Y-STR DNA evidence, there was still the presence of the antigen p30 and the victim's testimony.

Hall testified that he did not think DNA was the State's strongest evidence against Britt; rather, it was Britt's interview with the police, which was hard to overcome because Britt did not specifically deny having raped MC. Hall testified that he knew "from the get-go" that *Daubert* was "a losing issue" and that he should focus on Rule 403 and the difference between Y-STR testing and the more common autosomal DNA testing. Hall testified that he knew Robinette from when she worked at the crime lab, that he had spoken with her a few times about a different case, and that he had seen her at a CLE class. Hall said that he had spoken with Robinette a few times in preparation for the *Daubert* hearing but that he thought he had filed the *Daubert* motion before consulting her. He admitted that he heard the recording of Robinette's interview with prosecutor Stuart Cearley but still used her as a witness. Unlike Lammers, he did not think that Robinette's testimony was not helpful because an expert was needed for the *Daubert* hearing to take place and that she was able to talk about Y-STR testing of evidence. He said that Robinette was the only expert he consulted but that he thought there were funds available to have hired another expert. Hall said that he did not believe another expert would have been useful because he did not think "that

5

would yield a different result" because he doubted he could find an expert to debunk the science of Y-STR DNA evidence. Hall testified that he thought he had argued the *Daubert* factors at the hearing but simply failed to convince the trial court. Hall conceded that the Y-STR DNA evidence was admitted at trial because of Robinette's testimony. He said that he did not call Robinette at trial because they had not been successful in suppressing the Y-STR DNA evidence. Hall further testified that at trial, he cross-examined Butler "quite a bit" on Y-STR testing and hammered the Y-STR DNA evidence in his closing argument. He said that he also got LeDoux to say that the p30 antigen was not just semen and that the jury heard the limitations of p30. The State's witness, Beaty, was asked about the accuracy of Hall's description of the principles of Y-STR testing, and she said that his description to the jury was accurate.

Anjaria testified that he is a forensic DNA consultant and described Y-STR as "testing of last resort" because of its limitations. He stated that he reviewed the transcripts and records and that he disagreed with LeDoux's statement about the p30 antigen in that its presence does not confirm the presence of semen. He said that the presence of p30 merely suggests the presence of semen but that there is "wiggle room." Upon examination by the court, however, Anjaria conceded that a 2017 version of the manufacturer's handbook on the test for p30 indicated that a study showed that "the forensic biologist can extract material from vaginal swabs and stains on clothing and be confident that a positive result is due to the presence of semen." Anjaria said that he had relied on the 2019 version of the handbook. Anjaria further pointed out that, with the internal vaginal swabs, only a partial profile was

6

obtained—ten out of twenty-three markers. He testified that the unknown markers could have excluded Britt given that only ten were known as being consistent with him. He also stated that semen transfer was possible with respect to the pajama bottoms. According to Anjaria, the statistics in this case did not establish strong identification of Britt because Y-STR statistics do not individualize his unique profile in the population. Anjaria concluded his testimony, saying that his expertise would have "absolutely" been helpful to Britt's case.

The trial court entered an order denying Britt's amended petition for postconviction relief. The trial court addressed separately each of the issues set forth in Britt's petition. First, the trial court rejected Britt's contention that his counsel failed to properly challenge the admissibility of the expert testimony at the *Daubert* hearing and found that counsel had called into question the reliability of Y-STR testing. The trial court pointed out that, when Robinette testified to the credibility of the testing, counsel shifted the focus to challenging admissibility of the evidence under Arkansas Rule of Evidence 403. The trial court concluded that counsel made several good-faith attempts to exclude the Y-STR DNA evidence. Second, the trial court found that Hall testified that he communicated with Robinette in preparation for the *Daubert* hearing. Further, the trial court pointed out that Robinette raised concerns with the process having been rushed and with confusion over the State's numbers with respect to statistics. The trial court also found that, although Robinette provided damaging testimony, Britt had not shown that another expert would have testified differently. The trial court further pointed out that, with respect to the p30 antigen, even Anjaria testified that, although no sperm cells were present, a study confirmed that "the

7

forensic biologist can extract material from vaginal swabs and stains on clothing and be confident that a positive result is due to the presence of semen." Third, the trial court found that Britt did not overcome the presumption that counsel was effective with respect to the cross-examination of the State's experts. The trial court found that counsel got LeDoux to admit that she could not definitively say that the presence of p30 meant that semen was present and later made that point abundantly clear. Also, the trial court found that counsel was able to demonstrate for the jury the weaknesses in the statistics put forth by Butler. Fourth, the trial court rejected Britt's assertion that counsel was ineffective with respect to attacking the State's statistics given that counsel pointed out the statistics' shortcomings in the cross-examination of the experts and in opening and closing arguments. Fifth, the trial court found that counsel's failure to present a DNA expert at trial was trial strategy and not ineffective assistance. The trial court noted Anjaria's concession about a positive p30 result and found that such expert testimony could not overcome the fact that there was DNA found in the victim's vagina, and the victim testified to how the DNA got there, i.e., through sexual intercourse with Britt. Although the trial court made other findings, they are not relevant to the issues on appeal. Britt now appeals from the denial of his amended petition for postconviction relief.

## II. *Standard of Review*

This court will not reverse a trial court's decision granting or denying postconviction relief unless it is clearly erroneous. *Blasingame v. State*, 2025 Ark. App. 259. A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after

reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Id.* We review a defendant's ineffective-assistance-of-counsel claims using the two-step analysis outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner is required to show that his trial counsel's performance was deficient and that the deficiency prejudiced his defense. *Blasingame*, *supra*.

First, a claimant must show that counsel's performance was deficient. *Sylvester v. State*, 2017 Ark. 309, 530 S.W.3d 346. Counsel is presumed effective, and a petitioner, in claiming deficiency, must show that trial counsel's representation fell below an objective standard of reasonableness. *Id.* To overcome that strong presumption, the petitioner must demonstrate specific acts and omissions that, when viewed from trial counsel's perspective over the course of the trial, could not have been the result of reasonable professional judgment. *Id.* Neither conclusory statements nor allegations without factual substantiation are sufficient to overcome the presumption that counsel was effective. *Turnbo v. State*, 2025 Ark. 106.

As for the remaining issue of prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt. *Wilder v. State*, 2025 Ark. 88. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.* If the petitioner fails to make the threshold showing on the issue of deficiency, the remaining prong that weighs its potential prejudicial effect need not be addressed. *Arnold v. State*, 2022 Ark. 191, 653 S.W.3d 781.

III. *Discussion*

9

## A. Pretrial Hearing

### 1. *Failure to properly challenge admissibility of evidence under* Daubert *standards*

Britt relies on our 2019 opinion in which we "bluntly" pointed out that his argument that the trial court erred in admitting Y-STR DNA evidence was not preserved because he did not argue the *Daubert* factors below. He argues that counsel had the benefit of *Northern v. State*, 2015 Ark. App. 426, 467 S.W.3d 755, in which we refused to consider a *Daubert* challenge on appeal because the factors had not been argued below, yet counsel made the same unprofessional error. Britt asserts that this was not a matter of trial strategy; rather, it was negligence. He argues that, because the State's DNA evidence was the crux of its case, prejudice under *Strickland* was established, and but for counsel's error, there was a reasonable probability that the result of the trial would have been different.

In *Britt I*, we held that, although evidence was not presented with respect to each of the *Daubert* factors, the trial court had discretion to determine which factors were reasonable measures of reliability and that the trial court could have concluded that Y-STR testing of DNA evidence was not the sort of "junk science" with which *Daubert* was concerned. We noted that Britt had not argued the *Daubert* factors below, as he did on appeal, but said that, to the extent his argument was preserved, the trial court did not err in admitting expert testimony on Y-STR testing of the DNA evidence. The failure to make an argument that is meritless is not ineffective assistance of counsel. *Wheeler v. State*, 2015 Ark. 233, 463 S.W.3d 678. We do not consider Britt's conclusory statement about prejudice because Britt has failed to show that counsel's performance was deficient.

### 2. *Failure to consult an expert before filing* Daubert *motion*

Britt's only argument under this subpoint is that "the Rule 37 testimony showed that counsel failed to consult with any expert prior to filing his *Daubert* motion. (Counsel's failure here is referenced in email correspondence with Robinette.)" Because Britt does not explain what trial counsel would have done differently had they consulted with an expert and does not otherwise develop this conclusory statement, this point will not be addressed. Conclusory allegations that are unsupported by facts do not provide a basis for postconviction relief, and we do not research or develop arguments for appellants. *Matlock v. State*, 2020 Ark. App. 399, 606 S.W.3d 601.

### 3. *Failure to adequately prepare Robinette for the* Daubert *hearing*

Britt argues that the prosecutor's interview with Robinette only a week before the *Daubert* hearing would have demonstrated that she had nothing to offer the defense, yet counsel did not investigate the matter. Further, Robinette claimed in the interview not to have spoken with defense counsel and suggested that she had reviewed the case file at the last minute. Britt argues that, even though Robinette did not have "the full picture" of the DNA analysis, trial counsel unreasonably called her to testify at the *Daubert* hearing. Britt points out that Robinette presented damaging testimony that trial counsel would have been able to predict had either of them spoken with her or reviewed the interview transcript.

Hall testified that he knew the *Daubert* matter was "a losing issue" from the start but that he had spoken with Robinette and maybe sent her a few emails before the hearing. Hall testified that he did review the interview transcript, that he was confident that Robinette's

11

testimony about the science was correct, and that he had hoped to use Robinette's testimony to show that the admission of Y-STR DNA evidence would be too confusing to a jury. Matters of trial strategy and tactics, even if arguably improvident, fall within the realm of trial counsel's professional judgment and are not grounds for a finding of ineffective assistance of counsel. *Sims v. State*, 2015 Ark. 363, 472 S.W.3d 107. We cannot say that the trial court erred in concluding that Britt failed to overcome the presumption that his trial counsel's performance was effective.

### 4. *Presentation of damaging testimony by Robinette*

This subpoint is listed separately, but the argument falls within the last subpoint. The same analysis and conclusion apply here.

### B. Trial

### 1. *Failure to adequately cross-examine the State's DNA experts*

Britt argues that trial counsel did not properly and adequately cross-examine Butler and LeDoux. Britt argues that the cross-examination of LeDoux should have made clear that she could not testify definitively that semen was present just because the p30 antigen was present. He argues that the DNA analysis showed that p30 was present on the internal vaginal swab and that a minute amount of male DNA was present. Britt argues that Butler should have been asked whether she could say with certainty that whatever substance was responsible for the p30 was also responsible for the male DNA. He asserts that this was key since there was a debate about whether semen was even present. Britt also argues that the DNA-transfer argument should have been made through cross-examination instead of in

trial counsel's closing argument. Britt argues that only a tiny amount of DNA was present on MC's pajama bottoms and that it should have been made clear that DNA transfer was even more plausible in that case.

Trial counsel was able to get LeDoux to testify that the presence of p30 does not necessarily mean that semen is present, so Britt has failed to show that the performance by trial counsel was deficient in that regard. As for Britt's other points, even if he could show a deficient performance, Britt cannot show that the outcome of his trial would have been different. Britt states in a conclusory fashion that the fact that DNA played such a crucial role in the State's case against him demonstrates prejudice under *Strickland*. We disagree. Even without DNA evidence, the State had MC's testimony that Britt raped her, which was sufficient to sustain a conviction. It is well established that the uncorroborated testimony of the victim alone is sufficient to support a rape conviction. *Perez v. State*, 2016 Ark. App. 291, 494 S.W.3d 431.

2. *Failure to present DNA expert testimony*

Britt points out that trial counsel did not present any DNA expert testimony at all and maintains that it was crucial that the jury hear something of an expert nature in the defense's case-in-chief to rebut the State's evidence or create some reasonable doubt. Britt argues that the State's case was mainly based on DNA evidence and that, without DNA expert testimony to counter the State's evidence, the outcome was predictable.

When an ineffective-assistance-of-counsel claim is based on the failure to call an expert witness, the petitioner must offer the name of the expert witness that should have been

called, a summary of the admissible testimony of the expert, and a demonstration that the outcome would likely have been different if the testimony had been offered as required. *Crawford v. State*, 2023 Ark. App. 341, 669 S.W.3d 889. Britt suggests that Anjaria would have provided expert testimony beneficial to his case similar to his testimony at the Rule 37 hearing; however, Britt has not demonstrated that, but for trial counsel's errors, the outcome of his trial would have been different. MC testified that Britt raped her. Again, the victim's testimony is sufficient to sustain his conviction without any DNA evidence whatsoever. *Perez, supra.* Britt cannot show that, had trial counsel called Anjaria to offer expert DNA testimony at trial, the outcome would have been different in light of MC's testimony.

3. *Failure to adequately challenge the statistical evidence of Y-STR testing*

Britt argues that the statistics could and should have been better challenged. He states that the prosecutor was able to say that greater than 99% of the population was excluded by the statistics. Britt argues that to counter that statistic, trial counsel should have said something to the effect of "One in 207 (internal vaginal swabs) is like 1,000 in 207,000. The population of Arkansas is 3 million, which is approximately 1.5 million males. That means in a population the size of Arkansas, there are thousands of males who would also be included based on their DNA type."

The trial court did not clearly err in finding that trial counsel pointed out the shortcomings of the State's statistical evidence in his cross-examination of the State's expert and challenged the statistics in his opening statement and closing argument. Moreover, even if Britt could show a deficient performance in this regard, he cannot demonstrate prejudice

because he cannot show a reasonable probability that the outcome of his trial would have been different given that the testimony of the victim, standing alone, is sufficient to support a conviction for rape if the elements of the offense are proved. *Burnside v. State*, 2015 Ark. App. 550, 472 S.W.3d 497. MC's testimony provided substantial evidence to support Britt's rape conviction.

Affirmed.

TUCKER and BROWN, JJ., agree.

*Craig Lambert*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Walker K. Hawkins*, Ass't Att'y Gen., for appellee.